***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter in this case.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between Plaintiff and Defendant-Employer during the relevant time period.
4. Travelers Insurance Company was the carrier on the risk on or about March 13, 2009.
5. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
6. Exhibits:
 a. Stipulated Exhibit 1 — Pre-Trial Agreement
 b. Stipulated Exhibit 2 — Defendants Hearing Exhibits which included:
 Industrial Commission Forms/Filings,
 Medical Records,
 Plaintiff's Discovery Responses,
 Georgia Motor Vehicle Accident Report.
7. The issues before the Full Commission are:
 a. Whether Plaintiff conducted a reasonable search for suitable employment, and whether Plaintiff is disabled and if so, is Plaintiff therefore entitled to benefits.
 *********** OUTSTANDING MOTIONS *Page 3 
1. Plaintiff filed a motion with the Industrial Commission requesting Plaintiff not be required to attend the surgical consultation scheduled by Defendant's with Dr. Robert Lacin and that Plaintiff be allowed to withdraw his prior consent to attend the consultation. Plaintiff's motion is hereby denied.
2. Defendant's filed a motion with the Industrial Commission requesting Plaintiff be ordered to attend a surgical consultation with Dr. Robert Lacin, to which he previously agreed to attend. Defendant's motion is granted, Plaintiff is hereby ordered to attend a surgical consultation with Dr. Lacin.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 45 year old male who had completed the 11th grade.
2. Plaintiff's prior work history consists of drywall construction and specifically, he has been a drywall hanger/framer for the majority of his adult life.
3. Plaintiff suffered back injuries prior to the March 2009 work incident. Plaintiff sustained a shotgun wound to the abdomen and back in 1992 and underwent reconstructive surgery for his back at that time. Plaintiff stated it took ten years for his back to get "straightened out."
4. Plaintiff stated he was involved in a four-wheeler accident on January 28, 2002 and sustained another back injury.
5. In January 2009, Plaintiff was hired by the Defendant-Employer as a drywall hanger/framer. When Plaintiff was hired, Defendant-Employer was *Page 4 
building barracks in Fort Benning, Georgia. Plaintiff was paid $15.00 per hour and indicated he worked twelve to thirteen hours per day, seven days a week. Plaintiff was required to stay in the Columbus — Fort Benning area all week and the weekends while working. Plaintiff stayed in a motel. As part of Plaintiff's employment arrangement, his motel expenses were deducted from his paycheck on a weekly basis. Plaintiff was required to pay for his own food.
6. Plaintiff's work duties included lifting, carrying, stooping and climbing. He was often required to lift drywall boards weighing between 120 pounds and 150 pounds each.
7. On March 13, 2009, Plaintiff was involved in a motor vehicle accident while in route to the job site in Fort Benning, Georgia.
8. Plaintiff was transferred by EMS to Columbus Medical Center on March 13, 2009. Physical examination revealed no obvious sign of trauma. The EMS records indicate Plaintiff reported right side and low back pain. Plaintiff alleged he sustained injuries to the neck, back, shoulders and left knee.
9. On March 13, 2009, Plaintiff presented to Columbus Regional Medical Center. Plaintiff complained of pain in the left (rather than right) flank, back, chest and abdomen. Plaintiff underwent multiple diagnostic studies, including x-rays of the lumbar, thoracic and cervical spine. The lumbar and cervical x-rays revealed degenerative changes, but no evidence of fracture or significant abnormality. The thoracic x-rays were normal. Plaintiff was diagnosed with a closed head injury, contusions of the chest wall, contusion of the abdominal wall and strain of his back. Plaintiff was released to return to work without restrictions effective March 17, 2009. Plaintiff was advised to follow-up with his primary care physician. *Page 5 
10. Following his discharge from the hospital, Plaintiff returned to his motel and called his sister located in North Carolina to come to Georgia and transport him home so that he could follow-up with his own doctor.
11. The next morning Plaintiff was confronted by his employer and was requested to remain in Georgia until he felt better so he could return to work after a few days. Defendant-Employer did not offer to pay for Plaintiff's motel or food and did not discuss any potential pay arrangements regarding any potential light duty. Later in the day Plaintiff returned to his home in North Carolina.
12. Defendants accepted Plaintiff's injury of strain to the shoulders, knees, cervical and lumbar spine pursuant to a Form 60, on a medical only basis. Defendants subsequently denied Plaintiff's claim for temporary total disability benefits pursuant to a Form 61, on the grounds that Plaintiff was not disabled as defined by the Workers' Compensation Act.
13. On March 16, 2009, Plaintiff obtained treatment at Beck and Blackley Chiropractic Clinic without notice to defendants. Plaintiff completed an intake sheet at the initial evaluation and reported headaches, stiff neck, shoulder pain, hand weakness, severe mid back and low back pain and muscle spasms of the spine. Plaintiff was seen by Dr. W.W. Beck Jr. Dr. Beck diagnosed Plaintiff with traumatic injuries of the cervical, thoracic and lumbar/lumbosacral spine resulting in ligamentous instability, intervertebral segmental dysfunction, muscle spasms, nerve root irritation and pain. Dr. Beck's initial opinion was that Plaintiff remained totally disabled from work. Plaintiff received unauthorized chiropractic treatment from March 16, 2009 through June 8, 2009.
14. On April 6, 2009, Plaintiff presented to Southeastern Regional Medical Center (SRMC) for additional treatment of his low back pain. Drug testing revealed positive test results *Page 6 
for marijuana. Lumbar x-rays revealed no evidence of acute injuries and essentially normal findings of the lumbar spine. Plaintiff was released without restrictions.
15. On April 22, 2009, Plaintiff returned to Southeastern Regional Medical Center. Plaintiff reported back pain following the motor vehicle accident and noted that his Vicodin and Flexeril provided no relief. Plaintiff denied radicular symptoms and indicated only a gradual progression of lumbar pain. Plaintiff was diagnosed with back pain of questionable etiology and was treated conservatively. No restrictions were assigned to Plaintiff at that time. Plaintiff stated he did not return to work following the April 6, 2009 or April 22, 2009 visits.
16. On June 2, 2009, Plaintiff was referred to Allen Orthopaedics. Plaintiff reported right shoulder, left shoulder, left hip, left knee and back pain. Plaintiff again reported the history of his motor vehicle accident and alleged it had aggravated his pre-existing back pain. Plaintiff's x-rays showed L5-S1 degenerative disc disease. Dr. Allen diagnosed Plaintiff with neck/back pain and recommended an injection which was administered at that visit. Plaintiff was released to return to work with restrictions of no sitting more than 10 minutes and no standing more than 20 minutes at work.
17. Plaintiff returned to Allen Orthopaedics for follow-up on June 9, 2009, reporting continued neck and back pain, with some improvement. Plaintiff's physical examination revealed no objective evidence of injury and Plaintiff's subjective symptoms could not be verified. Dr. Allen referred Plaintiff for an MRI of the lumbar spine for further evaluation and continued his previous work restrictions.
18. On June 24, 2009, Plaintiff underwent a lumbar MRI. MRI results revealed chronic degenerative changes without evidence of disc herniation, nerve impingement or other significant findings. However, the radiologist noted a possible neoplasm. On July 2, 2009, Dr. *Page 7 
Allen referred Plaintiff for a bone scan to rule out cancer. Plaintiff was released with restrictions of no sitting more than 10 minutes, no standing more than 20 minutes and no lifting more than 20 pounds.
19. Dr. Allen reviewed Plaintiff's records for treatment prior to June 2, 2009 and noted they contained no reference to symptoms other than low back pain. Dr. Allen opined that if Plaintiff had in fact sustained injuries to those other body parts, he would have reported them to his prior treating physicians.
20. Plaintiff returned to Dr. Allen on July 2, 2009 and again there was no objective evidence of injury. Dr. Allen released Plaintiff to return to work with the same restrictions.
21. On August 6, 2009, Dr. Allen saw Plaintiff and noted the diagnosis, treatment recommendations and work restrictions remained unchanged. Plaintiff was referred for physical therapy with Mr. DeFalco at Allen Orthopaedics.
22. On September 22, 2009, Plaintiff was treated at SRMC Pain Management Clinic for an evaluation by Dr. Thomas F. Florian from a referral by Dr. Allen. Plaintiff denied receiving any prescription pain medications. Dr. Florian noted Plaintiff's subjective history reported was contradicted by his medical records which revealed Plaintiff not only obtained Vicodin and Percocet, but reported that they provided no relief. Dr. Florian referred Plaintiff for blood testing.
23. On September 22, 2009, Plaintiff's blood testing was completed and again revealed positive results for marijuana. Dr. Florian recommended only additional conservative treatment based on the blood testing results.
24. Plaintiff returned to Allen Orthopedic for a course of physical therapy. The therapist noted Plaintiff failed to attend scheduled appointments on September 8, 2009, *Page 8 
September 23, 2009, October 1, 2009 and October 6, 2009. Plaintiff failed to provide any explanation for his noncompliance with physical therapy.
25. On October 16, 2009, Defendants filed a Motion to Compel Plaintiff's compliance with medical treatment. On November 13, 2009, Executive Secretary Tracey H. Weaver filed an Order approving Defendants' Motion to Compel. Pursuant to the November 13, 2009 Order, Plaintiff was ordered to "fully comply with all medical treatment provided by defendants." The Order further stated that Plaintiff's failure to comply with the Order "may bar plaintiff from further compensation until such refusal ceases."
26. On October 19, 2009, Plaintiff returned for follow up with Dr. Allen and reported no change from his previous condition. Dr. Allen noted Plaintiff quit physical therapy and had not completed the bone scan, both against medical advice. Plaintiff's previous restrictions of no sitting more than 10 minutes, no standing more than 20 minutes at work, and no lifting more than 20 pounds were continued.
27. On October 20, 2009, Plaintiff's bone scan was completed. Plaintiff returned for follow up with Dr. Allen on October 29, 2009. Dr. Allen reviewed Plaintiff's bone scan and noted there was no evidence of cancer. Dr. Allen diagnosed Plaintiff with multiple level degenerative disc disease and continued his conservative treatment and previous restrictions.
28. On December 16, 2009, Plaintiff underwent an Independent Medical Evaluation (IME) with Dr. Robert Elkins. Dr. Elkins diagnosed Plaintiff with chronic complaints of low back pain without neurologic involvement and exaggerated pain behavior/symptom magnification. Dr. Elkins opined Plaintiff had reached maximum medical improvement (MMI) and assigned a 4% permanent partial disability (PPD) rating. Dr. Elkins rated Plaintiff's disability at 2% to the neck and 2% to the low back. Dr. Elkins opined Plaintiff did not require *Page 9 
additional medical treatment and released him from further care. Finally, Dr. Elkin indicated Plaintiff could return to work full-duty without any restrictions.
29. Dr. Elkin's obtained a subjective history directly from the Plaintiff. Dr. Elkins indicated that Plaintiff reported that he last worked on October 13, 2009, which is contrary to his testimony at hearing, and that he was no longer employed.
30. Dr. Elkins stated Plaintiff reported only neck and low back pain as a result of his accident. Plaintiff completed a Pain Profile Report in which he reported "9 out of 10" pain levels.
31. Dr. Elkins opined that Plaintiff's subjective reports of pain were inconsistent with the findings of his physical examination. Dr. Elkins indicated Plaintiff's physical exam and neurologic findings were normal.
32. Dr. Elkins also performed several ancillary tests to evaluate the validity of Plaintiff's symptoms. Based on the results of those tests, Dr. Elkins opined Plaintiff had exaggerated his symptoms in the pain diagram and exaggerated his symptoms generally. Dr. Elkins opined there was a possibility Plaintiff was malingering and diagnosed Plaintiff with mild to moderate symptom magnification, pain accentuation and a resolved mild exacerbation of low back pain.
33. Dr. Allen next saw Plaintiff on October 29, 2009. Dr. Allen opined Plaintiff was not complying with his treatment recommendations. Plaintiff was referred for a steroid injection and Dr. Allen renewed Plaintiff's prior restrictions.
34. Plaintiff returned to Dr. Allen on February 23, 2010 complaining of low back pain by that point. Plaintiff failed to attend his previous two scheduled appointments, on November 30, 2009 and January 11, 2010 and failed to provide an explanation for his failure to attend those *Page 10 
scheduled appointments. Dr. Allen recommended additional physical therapy and continued Plaintiff's prior work restrictions.
35. Plaintiff returned on March 18, 2010, and April 1, 2010. Dr. Allen noted there was no change to Plaintiff's condition at those visits, and his treatment and prior work restrictions were continued.
36. Plaintiff saw Dr. Allen on May 3, 2010. Dr. Allen noted Plaintiff discontinued his physical therapy and failed to attend pain management with Dr. Florian, both against medical advice. Dr. Allen indicated that Plaintiff's failure to comply with recommended medical treatment was ongoing at that point. Plaintiff's prior work restrictions were continued.
37. Dr. Allen testified Plaintiff was last seen on June 3, 2010 and his prior work restrictions were continued. Dr. Allen confirmed that he has never taken Plaintiff medically out of work during the course of his treatment. Moreover, he testified that if Plaintiff located employment within his assigned restrictions he would have allowed Plaintiff to return to work in that position at all times throughout the course of this case.
38. Dr. Allen opined to a reasonable degree of medical certainty that Plaintiff had not reached MMI and should be seen by a spine specialist in order to determine whether surgery was warranted.
39. As to the expert medical testimony of Drs. Allen and Elkins and to the extent their testimony is conflicting, the Full Commission gives greater weight to the opinion of Dr. Allen. The Full Commission finds, based upon the greater weight of the medical evidence, that Plaintiff does require continued medical treatment and has not reached MMI.
40. Plaintiff acknowledged that he has not looked for any other employment since March 13, 2009. Plaintiff admitted he has not contacted other employers or submitted any *Page 11 
applications for employment. Plaintiff alleged he is physically unable to work, is in too much pain and therefore is not able to search for employment. The Full Commission finds that Plaintiff did not make any effort to seek suitable employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 13, 2009, Plaintiff suffered an injury by accident arising out of and in the course of his employment, which resulted in a compensable low back injury. Defendants accepted the injury on a medical only basis. N.C. Gen. Stat. § 97-2(6).
2. In order to meet the burden of proving disability, a claimant must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by claimant's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a Plaintiff meets his burden of showing disability, the burden then *Page 12 
shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
3. In the instant case, Plaintiff did not meet his burden to show that he continued to be disabled from any employment. Plaintiff was on light duty restrictions from June 2, 2009 to present and was not taken out of work by any medical provider. Plaintiff was capable of performing light duty work but failed to make reasonable efforts to find suitable employment. Plaintiff failed to show that any attempt to find employment would be futile. Russell v. Lowes ProductDistribution, supra.
4. Plaintiff has not proven that he has been totally disabled or had diminished wage-earning capacity after March 17, 2009 and is therefore not entitled to payment by Defendant of total disability compensation from March 17, 2009 to present. Demery v. Converse,Inc., 138 N.C. App. 243, 530 S.E.2d 871 (2000).
5. Plaintiff is entitled to payment by Defendant of medical expenses incurred or to be incurred, as the result of his compensable injury, for so long as such medical treatment is reasonably necessary to effect a cure, provide relief or lessen his disability. N.C. Gen. Stat § 97-25.
6. Plaintiff has failed to comply with medical treatment recommended by the treating physicians, in violation of the Industrial Commission's November 13, 2009 Order.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD *Page 13 
1. Plaintiff shall attend the surgical consultation as recommended by Dr. Elkins.
2. Plaintiff is entitled to additional treatment for his compensable injury to the extent that he complies with medical recommendations made by his authorized treating physician. N.C. Gen. Stat. § 97-25.
This ___ day of June, 2011.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1